UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**STEVEN VINCENT SANN**,<br><br>Debtor. | Case No. **14-61370-7** |
| **Christy L. Brandon**,<br><br>Plaintiff.<br><br>-vs-<br><br>**MICHAEL J. SHERWOOD** and **Michael J. Sherwood, P.C.**,<br><br>Defendants. | Adv No. **15-00023** |

# MEMORANDUM OF DECISION

At Butte in said District this 26th day of February, 2016.

In this adversary proceeding, the Court held a hearing after due notice at Missoula on February 4, 2016, on the Motion to Dismiss Amended Counterclaim (Document No. 43), filed on December 21, 2015, by Plaintiff/Trustee Christy L. Brandon ("Brandon" or "Trustee"). The Trustee was represented at the hearing by attorneys Kyle W. Nelson and Trent M. Gardner of Goetz, Baldwin & Geddes, P.C., of Bozeman. Defendant Michael J. Sherwood ("Sherwood") of co-Defendant Michael J. Sherwood, P.C., filed an objection (Doc. 45) and appeared at the hearing in opposition. No testimony or exhibits were offered or admitted. Argument of counsel was heard. At the conclusion of the hearing the Court deemed the matter submitted and took the

1

Trustee's Motion under advisement. After review of the Trustee's Motion, Defendants' objection, and the record, this matter is ready for decision. For the reasons set forth below the Motion to Dismiss Amended Counterclaim will be granted and Defendants' counterclaim will be dismissed under Fed. R. Civ. P. 12(b)(6) (applicable in adversary proceedings under Fed. R. Bank. P. 7012(b)) for failure to state a claim upon which relief can be granted, without prejudice to Defendants' rights to seek an award of attorney fees under Fed. R. Civ. P. 54(b)(2)(A) (applicable under Fed. R. Bankr. P. 54(d)(2)).

This Court has jurisdiction of the Plaintiff's claims in the above-captioned adversary proceeding, in which the Plaintiff/Trustee Christy L. Brandon seeks recovery of funds and an accounting from Defendants under 11 U.S.C. §§ 542 and 543, under 28 U.S.C. § 1334(b) as arising under Title 11 of the U.S. Code and as related to the above-captioned Chapter 7 bankruptcy. Plaintiffs' claims for relief in this adversary proceeding are core proceedings under 28 U.S.C. § 157(b)(2).

## BACKGROUND AND PROCEDURAL HISTORY

There are no disputed issues of fact relating to the Plaintiff's Motion to Dismiss Amended Counterclaim. The above-captioned bankruptcy case was commenced by the Debtor Steven V. Sann ("Sann") on September 29, 2014, when he filed a voluntary chapter 11 petition. The case was converted to a case under Chapter 7 of the Bankruptcy Code on April 29, 2015, for "cause" under 11 U.S.C. § 1112(b)(1) based upon, *inter alia*, this Court's findings of substantial and continuing loss or diminution of the estate and absence of a reasonable likelihood of rehabilitation, gross mismanagement of the estate, and that conversion rather than dismissal was in the best interests of creditors and the estate because of Sann's guilty pleas to three felonies

including wire fraud and money laundering.[1]  The Court found that Sann diverted monies which had been subject to an "asset freeze" ordered by the United States District Court for the District of Montana in Cause No. CF 13-3-M-DLC, but from which a $17,844 monthly draw had been carved out in order to pay Sann's living expenses, plus funds to pay two mortgages.  Sann diverted those draws instead to pay his attorneys, including the Defendants in the instant adversary proceeding, without authority from this Court or the district court and in violation of the asset freeze.[2]

Plaintiff was appointed Trustee for Sann's Chapter 7 estate on April 30, 2015.  She filed an asset notice, employed attorneys, and commenced the instant adversary proceeding by filing a complaint on July 16, 2015.  The complaint sets forth two claims for relief:  Count I seeks turnover of approximately $648,352.20 in the Sherwood P.C. IOLTA Trust account ("Trust Funds") pursuant to 11 U.S.C. §§ 542 and 543; and Count II requests an accounting of all estate funds over which Sherwood had possession or control pursuant to 11 U.S.C. § 543(b)(2), and requests that the Court order Sherwood to pay the estate for any estate funds which Sherwood wrongfully disbursed under 11 U.S.C. § 543(c).

On September 25, 2016, Defendants filed an answer and counterclaim.  On December 3, 2016, Defendants filed an amended answer, counterclaim, and Third Party Complaint.[3]  The defenses in the amended answer aver:  (1) That Defendants' actions were in compliance with the

---

[1] The Memorandum of Decision is Document No. 248 in Case No. 14-61370.

[2] Debtor filed a timely appeal of the memorandum and order converting the case, which remains pending.

[3] The Third Party Complaint is the subject of a different Memorandum of Decision.

3

prior orders of the U.S. District Court and at the direction of the United States Federal Trade Commission ("FTC"); (2) that Defendants paid all remaining funds in their IOLTA Trust Account to Plaintiff in August of 2015, and delivered an accounting of those funds, which constitutes accord and satisfaction;[4] (3) that estoppel bars Plaintiff's unilateral demand for payment because the Trust Funds were in Defendants' possession as gratuitous bailees, who would not transfer the funds without a further order of the district court or express direction from both the Debtor and FTC; (4) that Plaintiff failed to join Sann as a necessary party; (5) failure to state a claim for which relief can be granted.

Defendants' counterclaim against the Trustee alleges that she is an agent of the United States, and that the complaint was presented for the improper purpose of coercing Defendants to deliver funds which Plaintiff was not yet entitled to receive under district court orders. Defendants allege that the Trustee was not authorized to unilaterally demand that Defendants turn over funds under 11 U.S.C. § 543, and that Defendants as bailees and otherwise under Montana statutes had no duty to deliver funds absent a demand by both Sann and the FTC. Because the complaint was unjustified and was presented for an improper purpose, Defendants' counterclaim requests an award of reasonable attorney fees and costs under the Equal Access to Justice Act ("EAJA"), Bankruptcy Rules of Procedure and this Court's inherent power, to compensate for Defendants' attorney time and costs expended in defending against the "premature" complaint which Plaintiff refused to dismiss.

The Trustee filed her Motion to Dismiss Amended Counterclaim on December 21, 2015,

---

[4]Plaintiff's supporting brief concedes at footnote 3 that Defendants complied with an order to turn over the Trust Funds. The only remaining issues involve whether Defendants are liable for improperly disbursing draws to Sann following conversion of the case to Chapter 7.

4

seeking dismissal of the counterclaim under F.R.Civ.P. Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Trustee contends that as a private trustee she is not, as a matter of law, an agent of the United States for purposes of the EAJA, and that the counterclaim for attorney fees is premature and is a potential remedy only, not a cause of action, which cannot be awarded unless Defendants are prevailing parties. Plaintiff argues that under the "American Rule," under which each litigant pays his or her own legal fees unless a statute or contract provides otherwise, applies in bankruptcy, and 11 U.S.C. §§ 542 and 543 do not provide for an award of attorney fees. As for the bad faith exception to the American Rule, the Trustee repeats that Defendants' counterclaim is premature and ultimately may be moot.

Defendants' response (Doc. 45) argues that this Court must take all the allegations of the amended counterclaim as true under F.R.Civ.P Rule 12(b)(6), and contends that the Plaintiff's complaint was filed for an improper purpose and in bad faith and is vexatious or spurious. Therefore, they contend, this Court may award Defendants attorney fees under F.R.Civ.P. Rule 54, under this Court's inherent sanction authority, and Fed. R. Bankr. P. 9011. Defendants contend that the Trust Funds clearly were not the property of Sann subject to turnover to Plaintiff because of the litigation initiated by the FTC and that Sherwood had been obliged to comply with the district court's order and as bailee not to release them.

Defendants contend they are entitled to reasonable attorney fees under the EAJA because Plaintiff filed her complaint with no justification and because the Plaintiff is an "official of the United States" under the EAJA because she was appointed as Trustee. Thus, they argue, pursuant to § 6 of the *Restatement (Second) of Agency* Plaintiff is an agent of the United States under the reasoning of *Bell v. Thornburg*, 743 F.3d 84 (5th Cir. 2014) (construing the federal

5

removal statute 28 U.S.C. § 1442(a)(1)) which concluded that a private trustee acted under officers of the United States and fell within the federal officer removal statute's purview. Defendants oppose denial of their counterclaim to avoid any argument that they have waived their claim for attorney fees, and based on case law which predates a 2014 change in Fed. R. Bank. P. 7054.

Plaintiff's reply repeats that she is not an agent of the United States, that she has not taken the position of the United States, and that Defendants' seek to extend the EAJA beyond what Congress intended. As for Defendants' counterclaim seeking attorney's fees under the bad faith exception to the American Rule, Plaintiff repeats that it is not a cause of action and that this Court has already ordered the turnover of Trust Funds which she sought in her complaint. Plaintiff concedes that Defendants may request attorney fees at the conclusion of this adversary proceeding if they are the prevailing party, but argues that Defendants' counterclaim is premature and potentially moot.

## DISCUSSION

Plaintiff's Motion to Dismiss Amended Counterclaim is based on F.R.Civ.P. Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### I. F.R.Civ.P. Rule 12(b)(6).

The United States Supreme Court explained the applicable standard under F.R.Civ.P. Rule 12(b)(6) as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility

6

standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949-50 (2009); *see also Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011).

The Ninth Circuit later explained:

> [W]e begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. We disregard threadbare recitals of elements of a cause of action, supported by mere conclusory statements. After eliminating such unsupported legal conclusions, we identify well-pleaded factual

> allegations, which we assume to be true, and then determine whether they plausibly give rise to an entitlement to relief. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; that is, plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> [*Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010)] (citations, alterations and internal quotation marks omitted); *see Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

*Alvarez v. Chevron Corp.*, 656 F.3d 925, 930-31 (9th Cir. 2011).

Applying these standards to Defendants' amended counterclaim, it begins at page 14 of Defendants' amended complaint. After incorporating all prior allegations, the amended counterclaim makes mostly conclusory statements that are not entitled to an assumption that they are true, including particularly paragraph 48 which states conclusively that the Plaintiff as Trustee was acting as an agent of the United States, and paragraph 51 which states that the Trustee "has taken a position which represents the "'position of the United States.'" The essential allegations of Defendants' amended counterclaim are paragraphs 64 ("The Plaintiff's position of the United States was not substantially justified"); 66 ("The Plaintiff's complaint was presented for the improper purpose of coercing the Defendants to deliver to Plaintiff funds which Plaintiff was not yet entitled to receive"); and 69 and 70 alleging that Plaintiff has refused Defendant's request to dismiss the complaint after Defendants complied with this Court's turnover order.

Almost every one of the allegations of the amended counterclaim are mere conclusory statements or legal conclusions couched as factual statements, which this Court is not bound to accept as true. *Iqbal*, 556 U.S. at 678-79, 129 S.Ct. at 1949-50. One exception is paragraph 70

which alleges that Plaintiff refused Defendants' request to dismiss the complaint after Defendants turned over the Trust Funds, but that by itself does not support an action for attorney fees under the EAJA.

## II. EAJA.

Dismissal under F.R.Civ.P. Rule 12(b)(6) "may be based on either the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory." *In re Tracht Gut, LLC*, 503 B.R. 804, 810 (9th Cir. BAP 2014). Defendants' amended counterclaim for attorney fees is based in part on the EAJA. The EAJA provides in pertinent part:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

11 U.S.C. § 2412(b).

The Ninth Circuit has written: "The EAJA permits a prevailing party, other than the United States, to recover attorneys' fees and expenses in civil actions involving the United States as a party." *U.S. v. 87 Skyline Terrace*, 26 F.3d 923, 927 (9th Cir. 1994). The term "United States" is defined in the EAJA as follows: "'United States' includes any agency and any official of the United States acting in his or her official capacity." 28 U.S.C. § 2412(d)(2)(C). Plaintiff in the instant adversary proceeding is not the United States, nor is she an agency or official of the United States.

Previously in the instant adversary proceeding the United States, its Department of

Justice, and its agency and official the Office of U.S. Trustee were dismissed as parties based upon the United States' sovereign immunity, and Defendants' failure to show an unequivocally expressed waiver thereof.  Without the United States or its agencies or officials of the United States as parties, relief cannot be granted to Defendants based on the EAJA.

Defendants argue that the Fifth Circuit decision *Bell v. Thornburg*, in which a Chapter 13 standing trustee was concluded to be acting under officers of the United States and thus fell within the purview of the federal officer removal statute.  743 F.3d at 89.  Defendants contend that *Bell* overruled the Fifth Circuit's earlier decision *Cromelin v. United States*, 177 F.2d 275, 277 (5th Cir. 1949) (holding that a bankruptcy trustee is an officer of the court but "is in no sense an agent or employee or officer of the United States.").  *Bell* is distinguishable from the instant case.

In *Bell* the Fifth Circuit did not specifically overrule *Cromelin*.  Rather, the Fifth Circuit simply recognized that *Cromelin* did not control the decision about whether a trustee was an "person acting under" an officer of the United States who could invoke 28 U.S.C. § 1442(a)(1) of the federal officer removal statute, because *Cromelin* was decided in 1949 before the Bankruptcy Reform Act of 1978 changed the way the bankruptcy system was administered.  *Bell*, 743 F.3d at 88.  Under the new system the Fifth Circuit concluded, because Chapter 13 standing trustees, although private citizens, are appointed under federal law, receive delegated authority, and both assist and carry out the duties and tasks of their federal superiors, that the trustee acted under officers of the United States and fell within the purview of 28 U.S.C. § 1442(a)(1).  *Id.* at 89.

The Ninth Circuit described the current way the bankruptcy system is administered, and the respective duties and functions of the U.S. Trustee and standing trustees, in *Curry v. Castillo*

*(In re Castillo)*, 297 F.3d 940, 950-51 (9th Cir. 2002):

> Today, under the United States Trustee Program, the Attorney General appoints regional U.S. Trustees. These U.S. Trustees are charged with the responsibility of supervising the administration of bankruptcy cases. In regions with sufficient volume of Chapter 13 bankruptcy cases, the U.S. Trustee for that region "may, subject to the approval of the Attorney General, appoint one or more individuals to serve as standing trustee," 28 U.S.C. § 586(b), a position that is also referred to as a "private trustee." H.R.Rep. No. 95–595, at 101, 106–06 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6062, 6066–68. Standing trustees must satisfy the eligibility requirements of 11 U.S.C. § 321, and qualify under 11 U.S.C. § 322 and 28 U.S.C. § 586. Once appointed, the standing trustee-operating under the supervision of the U.S. Trustee and pursuant to legislative and judicial directives—performs a wide variety of functions previously performed by bankruptcy judges. The United States Trustee is the "watchdog" of the bankruptcy system, H.R.Rep. No. 95–595, at 4 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 5966, charged with preventing fraud and abuse and with "fill [ing] the vacuum" caused by possible creditor inactivity. H.R.Rep. No. 95–595, at 100 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6061. The establishment, maintenance, and supervision of the panel of bankruptcy trustees is the United States Trustee's "primary function, and his most important contribution to the administration of the bankruptcy system." H.R.Rep. No. 95–595, at 439 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6394–95.
>
> iii. Duties of the Bankruptcy Trustee under the Bankruptcy Code
>
> The statutory duties of a bankruptcy trustee operating under the aegis of the U.S. Trustee are enumerated in 11 U.S.C. §§ 704, 1302, 1304. Generally, the trustee is to gather and liquidate the property of the estate, to be accountable for the estate, ensure that the debtor performs his or her obligations, investigate the finances of the debtor, review the proofs of claim, and where appropriate, oppose the debtor's discharge, be available to provide relevant information to parties-in-interest, and by court order, operate the business on a short-term basis. The trustee also must prepare the final report and an accounting for the administration of the estate. 11 U.S.C. §§ 704, 1302. Just as in the nineteenth century (and earlier) the bankruptcy trustee performs both adjudicatory and administrative functions.
>
> Thus in combining administrative duties with adjudicatory functions, Congress created a hybrid official. The bankruptcy trustee, both at common law and today, performs some functions historically viewed as judicial in nature, and others that are not. Although, like the common-law bankruptcy judicial officers, the trustee is charged with many legal, adjudicative, clerical, financial, administrative, and business functions, quasi-judicial immunity attaches to only

11

those functions essential to the authoritative adjudication of private rights to the bankruptcy estate. [*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 433, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993)].

*Curry*, 297 F.3d at 950-51; *see Nilsen v. Neilson (In re Cedar Funding, Inc.)*, 419 B.R. 807, 822 (9th Cir. BAP 2009).

In the instant adversary proceeding the Plaintiff's complaint seeks recovery of purported property of the estate, most of which the parties agree the Defendants have turned over already, and an accounting. Both goals are within the statutory duties of a trustee described above. *Curry*, 297 F.3d at 950-51. Defendants' citation to Montana statutes and principles of bailment to excuse their opposition[5] to the Trustee's demands are unavailing, because the Bankruptcy Code pre-empts state laws which conflict with a bankruptcy trustee's statutory duties, under the Supremacy Clause. United States Constitution, Art. VI, Cl. 2; *See Traders State Bank of Poplar v. Mann Farms,* Inc., 7 Mont. B.R. 237, 240 (D. Mont. 1989); *In re Lewis Industries*, 75 B.R. 862, 872 n.3 (Bankr. D. Mont. 1987).

*Bell* is distinguishable from the case at bar because *Bell* construed the federal officer removal statute, 28 U.S.C. § 1442(a)(1), while the instant case involves the EAJA. *Bell,* 743 F.3d at 87-89. Section 1442(a)(1) contains language including the "United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States thereof, in an official or individual capacity . . . ." 28 U.S.C. § 1442(a)(1); *Bell*, 743 F.3d at 87 (emphasis

---

[5]The attachments to Defendants' amended answer and counterclaim include a transcript ("Tr.") from a hearing held in the district court on August 14, 2015, in Cause No. CF 13-3-M-DLC. Ex. E at Doc. 39. Hon. Dana L. Christensen told Sherwood: "[Y]ou're holding these funds, you're subject to Judge Kirscher's order to disgorge these funds that you've got in your account and deliver them to the trustee. And I'm not going to give you any comfort in terms of telling you you don't have to do that." Tr. p. 18.

added). Section 2412(b) of the EAJA, by contrast, provides different and less expansive language, providing for liability "against the United States or any agency or any official of the United States in his or her official capacity." 28 U.S.C. § 2412(b).

A basic rule of statutory construction is that when the language of a statute is plain, the sole function of the courts is to enforce it according to its terms unless the disposition required by the text is absurd. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). Section 1442(a)(1) of the federal officer removal statute includes the phrase "or any person acting under that officer." "Acting under" was critical to the decision in *Bell*. 743 F.3d at 89. By contrast, EAJA § 2412(b) does not include language equivalent to the "acting under" language of 28 U.S.C. § 1442(a)(1). Neither does § 2412(b) include the phrase "in an official or individual capacity." EAJA § 2412(b) is limited to the United States or any agency or any official "acting in his or her official capacity."

Another rule of statutory construction states: "Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (internal quotation marks and alterations omitted); *In re Jones*, 339 B.R. 360, 364 (Bankr. E.D. N.C. 2006). Since Congress did not include an "acting under" clause in the EAJA, this Court presumes that Congress acted intentionally and purposely in excluding it. *Id.*

Another distinction between *Bell* and the instant case is that 28 U.S.C. § 1442 is to be liberally construed. *Bell*, 743 F.3d at 88-89, citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007). By contrast, the Ninth Circuit in *87 Skyline Terrace* cited a decision of the United

13

States Court of Appeals, Federal Circuit, *Levernier Const. v. United States*, 947 F.2d 497 (Fed. Cir. 1991), in which that Circuit wrote:

> The EAJA is a waiver of sovereign immunity which must be strictly construed. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 1, 8–9 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4986–87. It "lifts the bar of sovereign immunity for award of fees in suits brought by litigants qualifying under the statute, [but] does so only to the extent explicitly and unequivocally provided." *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1386 (Fed.Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). This court further stated in *Fidelity*, referring to the EAJA:
>
>> In construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress. It is an error to suppose that the ordinary canons of statutory construction are to be applied in this context, if they would add anything to what Congress has expressly said. Where, as here, a party's argument is "hopelessly dependent on implication and negative inferences," it ultimately must fail. [*Nibali v. United States*, 634 F.2d 494, 497 (Fed. Cl. 1980)].
>
> *Id.* at 1387.

*Levernier*, 947 F.2d at 502.

Thus, this Court must strictly construe § 2412(b) of EAJA and not expand liability beyond that explicitly consented to by Congress. *Id.* Congress drafted 28 U.S.C. § 2412(b) to limit liability payable thereunder in a civil action brought "by or against the United States or any agency or any official of the United States acting in his or her official capacity . . . ." Section 2412(b) does not include the "acting under" clause of the federal officer removal statute upon which the Fifth Circuit decided in *Bell*. 743 F.3d at 88-89.

The Plaintiff, as a private trustee, is not the United States nor any agency or official of the United States acting in her official capacity. In vacating a judgment and remanding an appeal from the Ninth Circuit, the United States Supreme Court has observed:

> Nor is the bankruptcy trustee so closely connected to the Federal Government that the two "cannot realistically be viewed as separate entities." [*United States v. New Mexico*, 455 U.S. 720, 735, 102 S.Ct. 1373, 1383, 71 L.Ed.2d 580 (1982)]. The bankruptcy trustee "is the representative of the estate [of the debtor]," 11 U.S.C. § 323(a); cf. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), not "an arm of the Government," *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) ....

*Cal. State Bd. of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 849-50 (1989).

Defendants' counterclaim for attorney fees under EAJA depends upon an expansion of liability by implication which is not explicitly and unequivocally expressed in 28 U.S.C. § 2412(b), and therefore must fail. *See Levernier*, 947 F.2d at 502. Without EAJA as a cognizable legal theory, dismissal of Defendants' amended counterclaim is appropriate. *Tracht Gut,* 503 B.R. at 810.

### III. American Rule.

There is no general right to recover attorney's fees under the Bankruptcy Code. *Renfrow v. Draper*, 232 F.3d 688, 693 (9th Cir. 2000); *Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir.1997); *In re Gatzke*, 365 B.R. 138, 185–86 (Bankr. D. Mont. 2007). Plaintiff's complaint avers claims for relief under 11 U.S.C. §§ 542 and 543, neither of which provides for an award of attorney's fees.

The "American Rule" is discussed in *Baker Botts L.L.P. v. ASARCO LLC*, __U.S. __, 135 S.Ct. 2158, 2164 (2015):

> "Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (internal quotation marks omitted). The American Rule has roots in our common law reaching back to at least the 18th century, see *Arcambel v. Wiseman*, 3 Dall. 306, 1 L.Ed. 613 (1796), and "[s]tatutes which

15

>invade the common law are to be read with a presumption favoring the retention of long-established and familiar [legal] principles," *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (internal quotation marks and ellipsis omitted). We consequently will not deviate from the American Rule " 'absent explicit statutory authority.' " *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994)).
>
>  We have recognized departures from the American Rule only in "specific and explicit provisions for the allowance of attorneys' fees under selected statutes." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 260, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Although these "[s]tatutory changes to [the American Rule] take various forms," *Hardt*, supra, at 253, 130 S.Ct. 2149 they tend to authorize the award of "a reasonable attorney's fee," "fees," or "litigation costs," and usually refer to a "prevailing party" in the context of an adversarial "action," see, *e.g.*, 28 U.S.C. § 2412(d)(1)(A); 42 U.S.C. §§ 1988(b), 2000e–5(k); see generally *Hardt, supra*, at 253, and nn. 3–7, 130 S.Ct. 2149 (collecting examples).

*Baker Botts L.L.P. v. ASARCO LLC*, __ U.S. __, 135 S.Ct. at 2164; *see also Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,* 549 U.S. 443, 448, 127 S.Ct. 1199, 1203, 167 L.Ed.2d 178 (2007).

With the EAJA having been found above not to apply, there does not appear to be any other applicable statute or contract upon which to base a claim for attorney fees. At this time there is no prevailing party in this adversary proceeding. While there might remain grounds for an award of attorney's fees under a bad faith exception to the American Rule, or under Rule 9011(c),[6] Fed. R. Bankr. P., relief under either of those theories is premature.

Prior to 2014, the Federal Rules of Bankruptcy Procedure included Rule 7008(b), which stated: "A request for an award of attorney's fees shall be pleaded as a claim in a complaint...."

---

[6]Under Rule 9011(c) imposition of appropriate sanctions is initiated either by motion or on Court's initiative.

16

*Carey v. Carey (In re Carey)*, 446 B.R. 384, 391 (9th Cir. BAP 2011).  In *Carey* a bankruptcy court had dismissed a postjudgment motion for attorney's fees, requested under the terms of a promissory note and guarantee, because the complaint did not state a claim for attorney's fees as required by Rule 7008(b).  446 B.R. at 388.  The BAP vacated the dismissal and remanded for the bankruptcy court to determine an appropriate attorney fee award as the prevailing party, because the BAP concluded that the complaint included adequate information, from its preamble to the prayer for relief, to provide the debtor with notice that appellant was asserting a claim for attorney's fees.  446 B.R. at 392, 394.

> In 2014, Rule 7008 was amended.  The Advisory Committee Notes states
>
> The Rule is also amended to delete subdivision (b), which required a request for attorney's fees always to be pleaded as a claim in an allowed pleading.  That requirement, which differed from the practice under the Federal Rules of Civil Procedure, had the potential to serve as a trap for the unwary.
>
> The procedures for seeking an award of attorney's fees are now set out in Rule 7054(b)(2), which makes applicable most of the provisions of Rule 54(d)(2) F.R.Civ.P.  As specified by Rule 54(d)(2)(A) and (B) F.R.Civ.P., a claim for attorney's fees must be made by a motion filed no later than 14 days after entry of the judgment unless the governing substantive law requires those fees to be proved at trial as an element of damages.  When fees are an element of damages, such as when the terms of a contract provide for the recovery of fees incurred prior to the instant adversary proceeding, the general pleading requirements of this rule still apply.

USCS Federal Rules of Bankruptcy Procedure, Rule 7008, Notes of Advisory Committee on 2014 amendments.

The instant adversary proceeding was commenced in 2015, after the 2014 amendment to Rule 7008 which deleted subdivision (b).  Accordingly, Defendants' amended counterclaim for attorney fees is not in compliance with applicable procedure for attorney's fees available to a prevailing party after judgment set forth  Rules of Procedure 7054(b)(2) and F.R.Civ.P. 54(d)(2).

17

Rule 1001, Fed. R. Bankr. P., states that "Bankruptcy Rules and Forms govern procedure in cases under Title 11 of the United States Code."

With EAJA having been found not to apply, the complaint and counterclaim in this case do not aver any claim governed by substantive law requiring Defendants' attorney fees to be proved at trial as an element of damages. There is no contract between the parties which provides for the recovery of fees incurred prior to the instant adversary proceeding. *See In re Pulsar Puerto Rico Inc.*, 2012 WL 3018063, *5 (Bankr. D. P.R. July 24, 2012) (dismissing counterclaim for attorneys' fees because it is not a cause of action and, before there is a prevailing party, it is premature because it may ultimately be moot).

Given Plaintiff's statements in her brief and reply, and statements of counsel at the hearing, Plaintiff will not be heard to suggest that Defendants have waived their claims for an award of attorney's fees if there are prevailing parties, under either the American Rule, Rule 9011 or Rule 54(d)(2). For now, however, based upon the foregoing,

**IT IS ORDERED** a separate Order shall be entered overruling Defendants' objections, granting the Plaintiff's Motion to Dismiss Amended Counterclaim, filed on December 21, 2015 (Doc. 43); and dismissing the Defendants' amended counterclaim against the Plaintiff/Trustee Christy L. Brandon included in Doc. 39.

_____
Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge