## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

In re

**STEVEN VINCENT SANN,**

          Debtor.

Case No. **14-61370-7**

---

**Christy L. Brandon**,

          Plaintiff.

-vs-

**MICHAEL J. SHERWOOD** and **Michael J. Sherwood, P.C.**,

          Defendants.

Adv No. **15-00023**

# MEMORANDUM OF DECISION

At Butte in said District this 15th day of August, 2016.

In this adversary proceeding the Plaintiff/Trustee Christy L. Brandon ("Brandon") seeks judgment, pursuant to 11 U.S.C. § 542(a),[1] against the Defendants Michael J. Sherwood ("Sherwood") and his law firm Michael J. Sherwood, P.C. (together "Defendants"), and turnover of $53,532 in funds which Defendants disbursed to the Debtor from Defendants' IOLTA trust account in three monthly draws in the amounts of $17,844, after the above-captioned bankruptcy case was converted to a case under Chapter 7 of the Bankruptcy Code. Defendants deny liability

---

[1]Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

1

under § 542(a) on the grounds that the funds were repaid to the Trustee by the Debtor and that Defendants disbursed the funds to the Debtor pursuant to a Stipulated Preliminary Injunction Order ("SPI") entered in the United States District Court for the District of Montana, Cause No. CV-13-3-M-DLC (hereafter the "FTC action"). The Court held a trial in this adversary proceeding at Missoula on May 5, 2016. The parties appeared or were represented at trial by counsel. Witness testimony and exhibits were admitted into evidence. At the conclusion of the parties' cases-in-chief the Court granted the parties time to file post-trial briefs and reply briefs, which have been filed and reviewed by the Court, together with the record and applicable law. This matter is ready for decision. For the following reasons, Judgment shall be entered against the Defendants in the amount of $53,532.00 under § 542(a).

This Court has jurisdiction of the above-captioned Chapter 7 bankruptcy under 28 U.S.C. § 1334(a). Plaintiff's First Amended Complaint ("FAC") includes a claim for turnover of property of the estate under § 542(a) of the Bankruptcy Code, which is a civil proceeding arising under Title 11, U.S.C., and related to the Chapter 7 case under 28 U.S.C. § 1334(b). Plaintiff's claim for turnover of property of the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(E). This Memorandum of Decision includes findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a) (applicable in this adversary proceeding under F.R.B.P. 7052).

The Plaintiff/Trustee Brandon appeared at trial and testified, represented by attorney Kyle W. Nelson of Goetz, Baldwin & Geddes, P.C., of Bozeman, Montana. Defendants were represented by attorneys Michael J. Sherwood of Michael J. Sherwood, P.C., and by Sarah J. Rhoades of Missoula. Sherwood testified, as did Terry Sann, who is the spouse of the above-named Debtor Steven Vincent Sann ("Sann" or "Debtor") (together "Sanns").

The following Exhibits ("Ex.") were admitted into evidence:  Plaintiff's Ex. 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 16, 18, 19, 21, 22, 23, 24, 25, 26, 29, 32, 34, 35, 40, 41, 42; and Defendants' Ex. A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, T, U, V, W, X, Y, Z, AA, BB, CC, DD, EE, FF, MM, PP, and QQ.

## FACTS & PROCEDURAL HISTORY

The facts relevant to this adversary proceeding date from January 8, 2013, when the United States of America, Federal Trade Commission ("FTC") filed a civil complaint against Sann, his spouse and other defendants in the U.S. District Court for the District of Montana, No. CV 13-3-M-DLC.  The FTC's complaint sought injunctive and equitable relief against Sann for deceptive business practices which allegedly resulted in "cramming" unauthorized charges onto consumers' monthly telephone bills for services that they neither requested nor authorized, in violation of the FTC Act, 15 U.S.C. § 45(a).  The complaint alleged that the cramming by Sann totaled over $70 million and resulted in net revenues to defendants of more than $26 million.

Defendant Michael J. Sherwood ("Sherwood") is an attorney admitted to practice in Montana, whose law office is Michael J. Sherwood, P.C.  Sherwood has practiced primarily criminal law since 1987; he testified that he did not know much about bankruptcy law prior to this case.  Initially Sherwood represented Sann in a medical marijuana case and later became involved in the FTC action.

In the FTC action before Hon. Dana L. Christensen, Chief Judge, United States District Court for the District of Montana, the FTC sought a preliminary injunction, disgorgement of ill-gotten gains, and other equitable relief including a permanent injunction.  Ex. A.  On May 8, 2013, prior to Sann's bankruptcy case, the district court entered the SPI, Ex. A.  Among other

3

things, the SPI imposed an asset freeze upon Sann and other defendants, but authorized Sann and his wife to use frozen funds to pay mortgage, personal and business expenses totaling $17,844 each calendar month.  Ex. A., p. 11.  Sherwood testified that the SPI includes a "spendthrift" or "carve-out" provision, which he understood to mean that he could write checks to Sanns, if they asked, and could write checks to anyone else if the district court ordered it or the FTC and Sann agreed by stipulation.

Certain proceeds from the sale of apartments owned 99 percent (99%) by Sann, which required the FTC's consent for sale, were deposited into Defendants' IOLTA trust account at the insistence of the FTC in order to preserve them.  Ex. 21, pp. 41-42.  A total of $648,352.20 in sale proceeds was deposited into Sherwood's trust account (hereinafter the "trust funds") on February 6, 2014, with the FTC's consent.  Ex. B is an email exchange dated February 6, 2014, between Sherwood and FTC's lead counsel wherein Sherwood proposed to deposit the proceeds in his trust account, and he asked the FTC for a letter to the title company directing it to deposit the funds into Sherwood's trust account.  FTC's counsel responded that FTC has no objection to the proposal.  Ex. B.  Sherwood testified that he did not consider the words "no objection" to constitute a stipulation by the FTC, but that Ex. C, a letter from FTC's counsel to the title company dated February 6, 2014, provided FTC's consent to the closing and the deposit of the proceeds into Sherwood's trust account subject to the asset freeze provided in the SPI.

Sann file a voluntary chapter 11 petition (Ex. 9) commencing the instant bankruptcy case in Las Vegas, Nevada, on September 29, 2014.  Sann and his spouse Terry Sann both claimed Nevada residency.  The FTC moved to transfer venue of Sann's bankruptcy case to the District of Montana, which was granted by order dated November 20, 2014, and accomplished on December

4

12, 2014.

Sherwood testified that he was aware of Sann's bankruptcy filing before November 14, 2014, and thereafter.  On November 24, 2014, in the FTC case Sann's attorneys Samuel A. Schwartz ("Schwartz") and Sherwood filed a motion for order approving the transfer of all assets to this Court.  Ex. 4 is a supporting memorandum and has Sherwood's name and address in the caption.  Sherwood testified that he was local counsel for Sann in the FTC case, and he was prepared to argue Sann's motion.

Brandon testified that Sherwood began making the $17,844 living expense payment to the Debtor from Sherwood's IOLTA account on November 25, 2014.  Sherwood testified that he had asked FTC's counsel for a stipulation authorizing Sherwood to make the monthly draws to the Debtor, since he could move trust funds only if the district court ordered it or the FTC consented in writing.  When the FTC responded affirmatively to his satisfaction, Sherwood began sending the Debtor the monthly draws from the trust funds.

On November 5, 2014, Debtor filed his bankruptcy Schedules.  Schedule B (Ex. 3) lists four checking accounts at U.S. Bank with account numbers ending in 7212, 6474, 1045, and 7818; and one U.S. Bank savings account ending in 6505.  Item 3 of Schedule B on Ex. 3 describes "Money held in IOLTA account with Michael Sherwood, Esq." in the amount of $648,352.20.  Brandon testified that, in her opinion, all the funds in these accounts, including the trust funds in Sherwood's IOLTA account, are property of the estate.  Debtor did not claim an exemption in the trust funds on Schedule C.  On Schedule I, line 8h, Debtor listed his living expense allowance of $17,844 received under the SPI.  Ex. 3, p. 30.

Debtor's Statement of Financial Affairs ("SOFA") listed at item 10 ("Other transfers"),

the $648,352.20 transferred to Michael J. Sherwood, P.C., in February 2014 from the sale of Porter apartments to Defendants' trust account.  Ex. 3, p. 39.  At item 4 ("Suits . . .") Debtor listed the FTC action.  Ex. 3, p. 37.

The case docket for Case No. 14-61370 reflects at Document No. 125 that a "Notice of Commencement of Chapter 11 Case and Meeting of Creditors" was filed on December 17, 2014.  The Bankruptcy Noticing Center ("BNC") mailed the Notice of Commencement by first class mail on December 19, 2014,[2] to Defendant Michael J. Sherwood, PC, at "401 North Washington, P.O. Box 8358, Missoula, MT 59807," which is the address of record for both Defendants.  Sherwood testified that he had notice of the Chapter 11 bankruptcy within a month after Debtor filed his bankruptcy petition.  Therefore, this Court finds that Defendants had notice of Debtor's bankruptcy case since December 2014 and had knowledge of this bankruptcy in November 2014.

On December 19, 2014, the district court entered a decision, Ex. 42/Ex. G, denying Sann's motions to modify the SPI and transfer all his assets to the bankruptcy court.  The district court noted several changes since the FTC action began, including criminal charges against Sann, his bankruptcy filing, and the court wrote that the FTC action is not subject to the automatic stay because of the exception outlined at § 362(b)(4).  Ex. 42, p. 4.  In particular the court wrote:  "In this case, the FTC alleges that many of Sann's frozen assets are attributable to his unlawful conduct.  If that is the case, and the Court takes no position on that question here, then those assets would not be property of the estate and not within the jurisdiction of the bankruptcy court. *R.A. Walker & Assocs.*, 37 B.R. 608, 612 (D.D.C. 1983)."  Ex. 42, p. 4.  Regarding this quote Sherwood testified:  "I think it was more than dicta but maybe not a ruling, that the assets

_____

[2]The Court takes judicial notice of the case docket for No. 14-61370-11, Doc. 127.

wouldn't be the property of the estate if the FTC prevailed." Trial Tr.[3] (May 6, 2016) 292:11-13.

Asked on cross-examination about the preceding quote, Brandon testified that her position is that the Debtor's funds in Defendants' trust account are property of the estate and that the FTC agrees with her. Sherwood testified that he relied on and acted in compliance with the SPI and that he understood the FTC's position to be that the trust funds were not Debtor's property.

The FTC filed Proof of Claim No. 10 on January 27, 2015, in an unliquidated amount based on the FTC action. Defendant Michael J. Sherwood, P.C., filed Proof of Claim No. 12 in Debtor's case on January 28, 2015, asserting unsecured claims in the total amount of $12,413.53, including a priority claim for wages, salaries or commissions in the sum of $4,821.

On March 6, 2015, the UST filed a motion to convert the case to Chapter 7. The FTC joined in the UST's motion to convert. The Debtor filed a response in opposition. A hearing on the UST's motion to convert was held on April 16, 2015. FTC's counsel appeared at the hearing and stated that if a trustee were appointed the FTC would stipulate to modification of the asset freeze so that all estate assets could be transferred to the trustee for administration. Ex. 10, p. 16.

On April 3, 2015, Debtor filed amended Schedules including amended Schedule B (Ex. 6). Ex. 6 shows the same U.S. Bank checking and savings accounts and shows $648,352.20 held in Sherwood's IOLTA trust account. Schedule I shows at line 11 the $17,844 monthly allowance being paid to Debtor from Sherwood's IOLTA account.

The Debtor filed an application to employ Defendants as special counsel nunc pro tunc on

---

[3]The trial transcript is at Doc. Nos. 121 & 122.

April 15, 2015, which included Sherwood's signed affidavit.[4]  Ex. 34; Defendants' Ex. FF, p. 9, item 29.  Sherwood testified that no one told him that he needed court approval of his employment by Debtor.

On April 29, 2015, the Court entered a memorandum of decision (Ex. 10) and order (Ex. 11/Ex. R) converting the case to a case under Chapter 7 of the Bankruptcy Code.  The Court converted the case based:  on substantial and continuing loss or diminution of the estate because of Debtor's monthly $17,844 draw for living expenses, which was excepted from the asset freeze; for gross mismanagement of the estate by Debtor's diversion of funds carved out of the asset freeze intended for payment of mortgages but used instead by Debtor to pay his attorneys; Debtor's unexcused failure to file timely monthly operating reports and forms; and Debtor's failure to file a disclosure statement or plan.  Ex. 10, pp. 19.  The Court explained that conversion to chapter 7 rather than dismissal was in the best interests of creditors and the estate because an appointed trustee would be able to investigate the Debtor's business affairs, marshal assets and try to cure defaults.  Ex. 10, pp. 23-24.  Sherwood held $541,288.20 of the trust funds in his IOLTA account on the date of conversion.

Brandon was added to the case as Trustee on April 30, 2015.  She testified that the FTC action against Debtor and the asset freeze were matters, which she had to address as part of her Trustee duties, and that she "stepped into the Debtor's shoes" upon conversion.  She described her duties as trustee as to maximize the estate to get the highest distribution to creditors.  She requested Debtor's bank statements from his attorneys from the date of conversion and received

---

[4]Sherwood's employment application was denied on September 14, 2015, because his representation of the Debtor in the FTC case was adverse to the bankruptcy estate.

the bank statements over a period of months.

The certificate of mailing included in Ex. 16 shows that the BNC mailed the conversion order to Michael J. Sherwood, P.C., at its address of record on Friday, May 1, 2015. Sherwood testified that he received the conversion order on May 5, 2015, but that he did not become aware of the conversion order until May 15, 2015,[5] because he was busy with other matters and was not receiving electronic notice. Ex. 16. Sherwood testified that he "was not up to speed on bankruptcy law" at the time of conversion; but he knew that once the Debtor received any trust funds they had to be turned over to the Trustee

On May 1, 2015, Sherwood sent the Debtor another check for $17,844 for living expenses pursuant to the SPI. Ex. 5/Ex. Z. Sherwood testified that he sent that check prior to having knowledge of the conversion order.

Brandon testified that the balance in Sherwood's IOLTA account after the May 1, 2015, disbursement was $523,444.20. She further testified that, after conversion of the case to Chapter 7, the Debtor should not have received any of the monthly draws from Sherwood's IOLTA account because the Trustee had "stepped into Debtor's shoes." The Trustee seeks judgment against Defendants, including the $17,844 which they mailed to the Debtor on May 1, 2015.

Terry Sann testified that account no. 6474 is a joint bank account she had with the Debtor. Ex. Y consists of account statements for account 6474 and shows internet banking transfers between Debtor's accounts. On May 7, 2015, a $2,000 transfer was made into account no. 6474 from account no. 1045. On May 18, 2015, another internet banking transfer into

---

[5]Ex. QQ lists attorneys of record in this case as of May 5, 2015. Sherwood is not included.

account no. 6474 was made from account no. 1045 in the amount of $53,000.  Ex. Y shows at

page 11 an ending balance on May 27, 2015, of $53,636.07.  The Trustee testified that, from her

perspective, all of the funds in account 6474 are property of the estate subject to turnover.

On May 15, 2015, the Trustee filed a motion in the FTC action to be substituted in place

of Sann for all matters that implicate property of the estate, based on her status as Trustee after

conversion of Debtor's bankruptcy to Chapter 7.  Ex. 17.  On May 18, 2015, the FTC filed a

memorandum of law in support of its motion to modify the SPI in the FTC case to permit the

Trustee to administer the Debtor's Chapter 7 estate.  Ex. 18.  At paragraph 16 on page 13 of Ex.

18, the FTC wrote that all of the Debtor's frozen assets are property of the estate, and that after

conversion the Debtor no longer had any authority to use property of the estate because that

authority was vested in the Trustee.

Also on May 18, 2015, Debtor's Nevada bankruptcy counsel Schwartz sent an email to

Sann, Sherwood, Patten, and other attorneys discussing strategy.  Ex. 23.  Schwartz suggested in

Ex. 23 that they argue for a carveout from the frozen trust funds for the defense in the FTC

action, with the balance going to the estate, and that "[o]therwise, I do not believe there is a basis

to object to the Chapter 7 trustee holding the funds."  Ex. 23, p. 1.  Sherwood admitted that he

was told by Schwartz that there was no basis to object to the Trustee taking possession of the

trust funds on May 18, 2015, before Sann deposited the first post-conversion draw, which

Sherwood sent to him, and that Schwartz believed the FTC would prevail on its motion to

modify the SPI.  Sherwood testified that he also received an email from Debtor's Montana

bankruptcy counsel Patten, who told him to make no transfers of the trust funds.  Sherwood

testified that he "didn't share Patten's opinions" and he continued to send Sann monthly draws.

10

Sherwood testified that he asked for more counsel and "did an intense amount of research."

Sherwood testified:

> Once I realized that this was a Chapter 7 and that perhaps the moneys that Mr. Sann was getting were really Ms. Brandon's, I -- or possibly, I talked to Mr. Patten, I talked to Schwartz, I talked to Mr. Lustigman, I talked to somebody in Mr. Lustigman's office that had some bankruptcy experience. I did an intense amount of research and decided that if Mr. Sann would hold these funds, that we -- that he would be okay, he wouldn't be in contempt or subject to some fraudulent transfer claim if he held them and waited to see what Judge Christensen did.

Trial Tr.[6] (May 5, 2016) 266:15-25.

On May 29, 2016, the first post-conversion monthly check #6880 of $17,844 from Sherwood's trust account to the Debtor, dated May 1, 2016, was debited to Debtor's account. Sherwood testified that he assumed the check had been deposited by Sann and negotiated earlier, and that he took no action to stop payment on that check because Sanns had a right to demand the monthly draws under the SPI. Sherwood believed that if he did not pay the monthly draws as stipulated by the parties he ran the risk of running afoul of the SPI and being held in contempt. Sherwood testified that he disbursed two more monthly draws to Sann from the trust funds in the amount of $17,844 on June 2, 2015, and July 1, 2015, after receiving Schwartz's email, and that all three draws were deposited into account 6474.

Sherwood testified that, when it came time for him to cut the check in June, he understood that the Debtor was obligated to hold the funds until a court decided whether the Debtor could keep them. Sherwood testified that he was concerned that the Debtor might get into trouble about the monthly draws, but that Sherwood had no sense that Sherwood would be held responsible. He testified that Sann insisted that the funds were required by the SPI, and

---

[6]The hearing transcript is at Document No. 121-122.

Sherwood did not want to fail to comply with that order.

On May 26, 2015, Debtor filed further amended Schedules (Ex. 7). This Amended Schedule B continues to list the checking accounts and savings account at U.S. Bank at item 2. Item 3 continues to list the money held in Sherwood's trust account in the amount of $648,352.20. Amended Schedule C still claims no exemption in the trust funds. Brandon testified that the Debtor never claimed an exemption on the funds held in Sherwood's IOLTA account, and that Debtor never argued that those funds were not property of the estate because they were subject to the spendthrift trust provision of § 541(c)(2).

Brandon testified that she has recovered approximately $580,000 for the estate, in addition to certain real property, but that she still has not recovered some real property in which the estate owns interests and has not recovered funds, which Sherwood paid to the Debtor out of his trust account. She estimated that the estate eventually will increase to approximately $1 million.

Brandon testified that she sent Sherwood a demand for turnover of the funds he held in his IOLTA account and filed a motion for turnover of those funds by the Debtor. She testified that she believes, and the FTC agrees, that the funds held by Defendants for the Debtor in their trust account are property of the estate. On June 2, 2015, Trustee's counsel sent the FTC's counsel a draft demand letter to Sherwood for turnover of the trust funds. Ex. M.

On June 16, 2015, the Trustee's counsel sent Sherwood the turnover demand letter, Ex. 22/Ex. O, informing Sherwood that the $648,352.20 in his trust account is property of the Debtor's estate and demanding turnover of those funds. The demand letter reflects a change requested by the FTC, stating that the FTC has no objection to the funds being turned over to the

Trustee.  The Trustee testified that she sent Sherwood the demand letter because she had not received estate property from the Debtor.

Sherwood testified that he had suffered an injury to his back, delaying an immediate response.  He researched his duty under § 543, and spoke to Debtor's attorney Patten and asked Patten if he would file a motion in the bankruptcy court, but Patten never did.  Sherwood responded to the Trustee's demand by email to her counsel dated June 24, 2015, Ex. 8/Ex. AA. In Ex. 8 Sherwood informed the Trustee that he held approximately $500,000 in his trust account.  Sherwood denied Brandon's demand for turnover of the funds, and stated that he will continue to pay Sanns approximately $17,000 per month for their living expenses pursuant to the SPI until directed otherwise by the district court in the FTC action.  Brandon was asked on cross-examination if her demand letter exposed Sherwood to sanctions for violation of the SPI.  She answered that they have a difference of opinion on the effect of the SPI.

On June 19, 2015, the Trustee filed a motion for turnover in the Chapter 7 case.  Ex. 25 sought an order directing the Debtor to turn over all funds in his bank accounts, IRS tax refund, and "all funds received by Debtor pursuant to the Injunction Order."[7]  The Debtor filed an objection to the turnover motion stating that the Trustee's "appropriate recourse is with US District Court to modify the stipulated injunction in order to obtain the relief the Trustee seeks."[8] Asked by Sherwood on cross-examination whether Sherwood had notice of the turnover motion, Brandon testified that she believed he received notice because he was local counsel and that her

---

[7]Sherwood testified that the turnover motion did not include funds in his trust account. The quoted language above from Ex. 25 shows that it did include funds that were paid to Debtor from his trust account under the SPI.

[8]Doc. 340, p. 3, in Case No. 14-61370.

13

motion for turnover referred to conversion of the case to Chapter 7. Ex. 25.

On June 29, 2015, the ending balance in Debtor's bank account 6474 was $59,373.65. Ex. Y, p. 19. On June 30, 2015, the ending balance was $77,136.04, reflecting a second post-conversion disbursement from Sherwood of $17,844. Ex. Y, pp. 13, 19.

Brandon testified that Sherwood sent the Debtor a total of $53,532 after the date of conversion, which is the amount of judgment she requests. Terry Sann and Sherwood testified that all three of the post-conversion draws sent by Sherwood to Sann were deposited into account 6474.[9] Sherwood sent the Debtor the third monthly draw check in the amount of $17,844 from his trust account on July 1, 2015. Ex. Z. Sherwood testified that when he sent the third check he still had not received a written consent from the FTC for a transfer of trust funds to the Trustee. Terry Sann testified that in July of 2015, she and the Debtor used funds from account 6474 to catch up on their mortgages, including a $3,428.41 payment to Seterus Mortgage on July 2, 2015. Ex. Y, p. 17.

Asked why he sent the three monthly draws to the Debtor instead of interpleading the funds, Sherwood answered that it was a good question in hindsight, and that he was aware of interpleader procedure, but he did not see interpleader as an option.[10]

The Trustee commenced this adversary proceeding on July 16, 2015, before the district court ruled on the FTC's motion to modify the SPI and before the district court allowed the

---

[9]Brandon testified that she remembered at least one monthly draw check being deposited into account 6474.

[10]Interpleader is provided at Fed. R. Civ. P. Rule 22. Rule 7022 ("Interpleader") provides that Rule 22(a) applies in adversary proceedings.

Trustee to be a party in the FTC action.[11]  The complaint avers the history of the FTC action; that Sherwood holds trust funds in his IOLTA account; that the Debtor claimed the trust funds as property of the estate, and that the FTC characterized them as property of the estate in its pleadings; the Trustee's demand to Sherwood for turnover; and Sherwood's refusal based on the SPI.  Count I of the complaint seeks an order of turnover of the trust funds pursuant to §§ 542 and 543.  Count II sought an accounting and repayment of improper disbursements to the Debtor.

Sherwood testified that the complaint was the first time he saw a reference to § 542, and that was 19 days after he sent Debtor the third monthly $17,844 draw.  He testified that he first signed up for electronic filing and notice when the original complaint was filed in this adversary proceeding.

A hearing on the Trustee's motion for turnover was held in this Court on July 28, 2015.  As of that date, Brandon testified, the district court still had not ruled on her motion to be added to the FTC action as a party.  The Debtor was represented at the July 28, 2015, hearing by attorney James A. Patten ("Patten").[12]  Sherwood appeared by video as a witness in a different matter in this bankruptcy case.  He testified that he was not aware of the hearing on the Trustee's motion for turnover until he was examined.  Trial Tr. (May 6, 2016) 290:22-291:1.

The FTC was represented at the hearing by counsel, who did not dispute the assertion by the Trustee's attorney at the hearing that the FTC consented to the Trustee's motion for

---

[11]Sherwood testified that "was critical to me" because he could only distribute trust funds if there was a stipulation between parties. Tr., p. 296, ll. 19-24.

[12]Patten has practiced bankruptcy law in this Court for several decades.

turnover.[13]  Ex. 21, p. 10, ll. 20-23.  Sherwood testified that the Trustee and counsel for the FTC did not tell him that the FTC consented to Sherwood transferring the trust funds to the Trustee, and that he did not learn that the FTC consented until he spoke with Debtor's attorney, Patten, on July 28, 2015.

This Court noted the SPI and indicated it would "defer to Judge Christensen as it relates to the injunctive order."  Ex. 21, p. 17, ll. 11-13.  This Court asked about the monthly draws to the Debtor; the Trustee's attorney responded:  "It's coming from the moneys that Mr. Sherwood is holding which are undisputedly property of the estate. And that's exactly the position we've taken: It's fine, you can distribute that to the debtor, but once the debtor gets it, he has to give it to the trustee."  Ex. 21, p. 17, ll. 19-23.

Asked about that last sentence, Brandon testified that she believes Sherwood was wrong to keep sending the Debtor monthly draws after conversion of the case, but even so the Debtor was required to pay those funds to the estate.  Sherwood testified that he was not at that hearing, but that his position is that he could distribute the funds to Sann "because it didn't become Mr. Sann's money until the bank honored the check."  Tr., p. 300.  Sherwood testified that he was confused, but he did not think there was a clear ruling that the funds in his trust account were property of the estate; he did not have a stipulation from the FTC allowing a transfer into the bankruptcy court; but he had a federal district court injunction which authorized the Debtor to get that monthly allowance and had a stipulation by the FTC that he could pay Sanns the monthly

_____

[13]Ex. MM is an email exchange between Trustee's counsel and FTC counsel on June 16, 2015.  The Trustee asked for FTC's consent to the Trustee's letter to Sherwood asking for turnover of the trust funds.  FTC's counsel replied "We're fine with the letter" but asked for "one small change," i.e., changing "FTC's consent" in the turnover letter to "FTC has no objection to the funds being turned over to the Trustee."  Ex. MM.

16

draw.  Trial Tr. (May 6, 2016) 301:9-13.

At the July 28, 2015 hearing this Court observed:  "I guess I'm troubled by that, that, in fact, that if there's moneys being released from those funds, they should go to the trustee on a disbursement and be held there subject to whatever the District Court decides to do on its, on its own, but those moneys should not be going to Mr. Sann."  Ex. 21, p. 18, ll. 20-25.[14]  As a result of the July 28, 2015, hearing, after a conversation with either Patten or the Debtor, Sherwood testified that he decided he was not going to issue the monthly draw for August 1, 2015, because Patten said not to.  Trial Tr. (May 6, 2016) 304:20-305-2.

On July 31, 2015, the monthly $17,844 draw issued July 1, 2015, was deposited into account 6474.  Ex. Y, p. 21.  On August 3, 2015, and August 12, 2015, the Debtor made several transfers into account 6474 from other accounts[15] totaling $34,980.49; and on August 12, 2015, Debtor made a transfer of $10,000 from account 6474 to account 7204.  Ex. Y, pp. 21, 27.

The Court entered an order granting the Trustee's motion for turnover on August 4, 2015.  Ex. 19.  The Court ordered the Debtor to turn over to the Trustee all funds in his bank accounts on the date of conversion, including $626.05 from account 6474 and $48,580.74 from account 7212.  Ex. 19, p. 3.  In addition the Court ordered the Debtor to turn over the $53,532 for the three months of disbursements paid to Debtor by Sherwood from his IOLTA account after the date of conversion.  In Ex. 19 at page 4, numbered paragraph 8, the Court wrote that the $53,532 in draws from Sherwood's IOLTA account "are property of the bankruptcy estate."

---

[14]Sherwood responded at the trial that he was not present at the turnover hearing.  He appeared by video and testified at a hearing on a different matter.

[15]The other accounts named on Ex. 7, p. 21, are 7818, 4740, 7212, 6505, 1045, and 7204.

17

Sherwood asked the Trustee on cross-examination if the Court ever ordered him to turn over the $53,532.  Brandon responded that the Bankruptcy Code required him to turn it over.  Ex. 19 did not order Defendants to pay the Trustee $53,532.  Sherwood testified that the turnover order was the first time he saw that the FTC consented or agreed to the trust funds being turned over to the Trustee.  Trial Tr. (May 6, 2016) 305:14-16.  He testified that he prepared a notice to file with both courts stating that he intended to comply unless the district court ordered otherwise.

Ex. 32 is confirmation of a wire transfer from the Debtor to the Trustee in the amount of $80,248.75 dated August 13, 2015.  Brandon and Terry Sann both testified that the wire transfer came from account 6474 and included funds subject to the turnover order.  The Trustee credited that transfer against amounts for which she had demanded turnover from the Debtor's bank accounts, including those with account numbers ending in 6474, 1045, 7212, and 4740.

Brandon testified that Sherwood's three checks sent to the Debtor from the trust funds post-conversion lost the estate $53,532.  From the funds turned over by the Debtor, Brandon credited approximately $48,500 to account 7212, and $5,790 to account 1045.  Asked on cross-examination if she would permit the Debtor to request how funds he turned over are applied, Brandon answered that she would compare Debtor's request to her trustee duty under § 704 to maximize distribution to creditors.

Asked whether he felt a need to turn over the trust funds to the Trustee before the district court ordered him to, Sherwood testified that he felt that because the SPI required the FTC's consent for Sherwood to write checks not covered by the injunction, he did not want to run the risk of being held in contempt by the district court for refusing Sanns' request to disburse the

18

monthly draws.

Sherwood attended a scheduling conference in the FTC action on August 14, 2015, at which, he testified, the district court gave its approval for Sherwood to turn over the trust funds to the Trustee.  In addition on page 47 of the transcript of the conference Judge Christensen stated:  "And that's, that's my point. You, you all work that out. To the extent Judge Kirscher gets a copy of this transcript and reads it, let me just say the following:  Judge Kirscher, I am not intending by anything I say here to intervene in any matters related to bankruptcy.  Sincerely, Judge Christensen."  Ex. P, p. 54, ll. 16-21.

The district court issued its written order approving Sherwood's turnover to the Trustee on August 20, 2015, and later granted the Trustee's motion to appear be substituted for Sann as party in the FTC action.  The FTC action seeking equitable relief remains pending.

On August 14, 2015, as a result of the district court's ruling at the scheduling conference, Sherwood sent the Trustee's attorney a letter and check for the remaining trust funds in the amount of $487,756.20, leaving a zero balance in his IOLTA account.  Ex. 4.  Sherwood asked the Trustee to dismiss this adversary proceeding.  She declined.

Brandon testified that the trust funds she received from Sherwood were short by $53,532 because of the three post-conversion monthly $17,844 draws which Sherwood sent to the Debtor. She testified that the amount is not inconsequential, and that recovery of that $53,532 would increase the distribution to creditors.  Sherwood testified that he sent the Trustee all the trust funds he had.

Brandon testified that she is holding estate funds in an estate bank account, from which she spends some after obtaining authority from the bankruptcy court.  She does not expect to

19

recover any more estate funds from the Debtor while he remains incarcerated[16] since August 20, 2015.  Terry Sann testified that as the time approached for Debtor to report to prison, the task of paying Sanns' expenses fell to her, and she is paying expenses out of their joint account 6474. She sent Debtor's bankruptcy attorneys a check, Ex. 29, in the amount of $21,976.79 dated August 20, 2015, from Debtor's Zala medical account.

On March 22, 2016, the Trustee filed her FAC (Doc. 76).  Brandon explained that an adversary proceeding instead of a motion was required in order to recover money from these Defendants.  The FAC contains a single claim for relief based upon § 542(a), requesting a judgment ordering turnover by Defendants of $53,532 of trust funds disbursed to Debtor by Sherwood after the date of conversion.  Paragraph 32 of the FAC avers:  "Debtor failed to turnover any of the Trust Funds which had been distributed to him by Sherwood post-conversion."  Sherwood testified that he was upset when he read that and felt betrayed by Sann, if it was true.  Sherwood obtained copies of the bank statements for account 6474 to see where the funds went.

From the bank statements, Ex. Y, Sherwood prepared Ex. T,[17] his summary of the transactions and balances in account 6474 from 6/29/15 through the wire transfer of $80,248.75 to the Trustee on 8/13/15.  On cross-examination Sherwood testified that Ex. T involves transactions that are relevant to a LIBR analysis.

Sherwood filed an answer to the FAC denying liability.  He testified that he believes it

---

[16]The Trustee testified that she is seeking denial of Debtor's discharge for concealment of assets.

[17]Ex. T was admitted with a correction on page 3 regarding the date of a $1,000 credit from Terry Sann.

has yet to be determined that the trust funds are property of the estate, and that if the FTC prevails in its action in district court, then the trust funds will be deemed not property of the estate.

In the main case, on April 5, 2016, after a show cause hearing the Court entered a memorandum of decision, Ex. 26, holding the Debtor in contempt for failing to fully comply with the turnover order by failing to pay the Trustee approximately $124,000.  The Debtor did not appear at the hearing because of his incarceration, and his attorneys had withdrawn.[18]

Ex. DD is Sherwood's summary of tracing options of funds using methods designated as "LIBR," "FIFO," "LIFO," and "PRORATA."  Sherwood applied the four tracing options to the amounts from Ex. Y depicting account 6474.  He explained that he prepared Ex. DD after he was told that Sann failed to turn over the monthly draws.  Sherwood testified that he looked at the statements for account 6474 and saw that Sann had in fact turned the monthly draws over to the Trustee from account 6474.  On cross-examination Sherwood agreed that the point of Ex. DD was to show that the three draws the Debtor received from Sherwood's trust account post-conversion were still in account 6474.  Trial Tr. (May 6, 2016) 321:19-22.

Asked on direct examination about Sherwood's request that tracing of funds from his IOLTA account to the Trustee should be applied, Brandon testified that she disagreed about tracing.  Brandon testified that tracing would not work, would not be of any benefit to creditors, and would diminish the distribution to creditors; whereas if she prevails in the instant adversary proceeding and recovers from Defendants the $53,532 in monthly draws which Sherwood sent to

---

[18]Sherwood testified that he was allowed to withdraw as Sann's attorney in the FTC action after the court denied his application for fees.  Sann continued in the FTC action pro se.

the Debtor, the distribution to creditors will increase.

Even if the Trustee recovers the $53,532 from Sherwood, Brandon testified, the estate still will not have recovered all the funds ordered turned over by the Court. Asked on cross-examination whether it was equitable to seek the $53,532 from Sherwood instead of the Debtor, while Sherwood was at risk of contempt if he failed to send the Debtor the monthly draw provided by the SPI, Brandon testified that her purpose is to recover the $53,532 and maximize the distribution to creditors. She denied applying § 542 arbitrarily and denied Sherwood's hypothetical that she was attempting a double recovery of funds from Defendants and the Debtor.

Brandon admits that she seeks to recover the $53,532 from both the Debtor and Defendants, but she testified that Sherwood had control of the trust funds and wrongfully paid the Debtor $53,532 in monthly draws post-conversion, and that he should have directed those draws to the Trustee.

## DISCUSSION

### I. Section 541 – Property of the Estate.

Plaintiff argues that the $53,532 in trust funds sent by Defendants to the Debtor is property of the estate based on the fact that the Debtor listed the trust funds in his Schedule B and did not claim an exemption in the trust funds on Schedule C, and that this Court determined that the trust funds are property of the estate at the time it ordered turnover by the Debtor, a determination which now is final. Sherwood also was told by Debtor's bankruptcy counsel that the trust funds are property of the estate, based upon which the evidence shows that Sherwood admitted that the trust funds "possibly" are property of the estate. Notwithstanding, after Sherwood researched the issue himself, Defendants argue that the three $17,844 monthly draws

from the trust funds did not become property of the estate until the checks from their trust account were deposited into the Debtor's bank account and Debtor took possession of the funds. Defendants' argument fails under the broad definition and scope of the phrase "property of the estate" under § 541(a).

Section 541(a)(1) provides that the commencement of a case creates an estate which "is comprised of all the following property, *wherever located and by whomever held* . . . [e]xcept as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1) (emphasis added); *United States v. Whiting Pools*, 462 U.S. 198, 204-05 (1983); *Gandara v. Bitterroot Rock Products (In re Gandara)*, 257 B.R. 549, 553 (Bankr. D. Mont. 2000); *see also In re Beccari*, 20 Mont. B.R. 282, 290-91 (Bankr. D. Mont. 2002).

Given the plain language of § 541(a)(1), it is appropriate to note the basic canon of statutory construction that when the language of a statute is plain, the sole function of a court is to enforce it according to its terms, unless the disposition required by the text is absurd. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917))). The plain language of § 541(a)(1) defines property of the estate "wherever located and by whomever held." Thus, the fact that the $53,532 was held by Sherwood in his trust account, and not yet deposited into Debtor's bank account, does not exclude it from property of the estate. *Whiting Pools*, 462 U.S. at 204.

The Supreme Court explained the broad scope of § 541(a):

> [Section] 541(a) provides that the "estate is comprised of all of the following property, wherever located: . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad. Most important, in the context of this case, § 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code. See H. R. Rep. No. 95-595, p. 367 (1977). Several of these provisions bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced.
>
> Section 542(a) is such a provision. It requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee.

*Whiting Pools*, 462 U.S. at 204-05; *Gandara*, 257 B.R. at 553, quoting *Whiting Pools*.

Property of the estate also includes "[a]ny interest in property that the estate acquires after the commencement of the case." § 541(a)(7); *Gandara*, 257 B.R. at 553. Based on the broad scope of § 541(a) under *Whiting Pools*, the evidence of the origin of the trust funds from the sale of apartments owned 99% by the Debtor, Debtor's listing of the trust funds in his bankruptcy Schedules and Debtor's rights under the SPI to request and use the monthly draws from the trust funds to pay his living expenses, this Court finds that the trust funds from the sale of apartments which were deposited into Defendants' IOLTA account with the FTC's consent are property of the estate of the Debtor under § 541(a)(1). Furthermore, the broad scope of § 541(a)(1) includes all of the Debtor's legal and equitable interests pursuant to the SPI as property of the estate after commencement of this bankruptcy case. *Whiting Pools*, 462 U.S. at 204-05.

As for the FTC action, the evidence shows that it remains pending, and other than the SPI, the district court has not yet imposed a constructive trust or granted other final equitable relief against the trust funds. Until the FTC's claims are litigated, the Debtor's and estate's interests in the trust funds are within the broad scope of § 541(a). *Whiting Pools*, 462 U.S. at

204-05.

This Court acknowledges Judge Christensen's statement regarding property of the estate in Ex. 42. As this Court stated previously it defers to the district court with respect to the SPI. However, the issue of whether the trust funds are property of the estate under bankruptcy law never has been submitted to the district court in the FTC action; the district court has not decided it and need not decide it.

Judge Christensen mentioned "property of the estate" in reference to future proceedings in the FTC action, i.e., if the FTC's allegation that Debtor's frozen assets are attributable to his unlawful conduct is proven, "and the Court takes no position on that question here." Ex. 42, p. 4. Section 541(a) is a federal statute in the U.S. Bankruptcy Code. The Supreme Court's decision describing the broad scope of property of the estate under § 541(a) is controlling authority. *Whiting Pools*, 462 U.S. at 204-05. A proceeding to turn over property of the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(E), which the district court has referred to this Court under Standing Order No. 12 (Revised), United States District Court for the District of Montana (2009).

This Court has concluded that the trust funds in Defendants' IOLTA account are property of the estate under § 541(a) of the Bankruptcy Code. That conclusion has no final bearing on the remedies sought by the FTC in the FTC action, such as a constructive trust. A constructive trust is a remedy which cannot affect rights in the res until imposed. *In re Markair, Inc.*, 172 B.R. 638, 642 (9th Cir. BAP 1994); *In re Retz*, 2008 WL 762186, * 13 (Bankr. D. Mont.), quoting *Markair*; *see also Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.)*, 178 B.R. 480, 488 (9th Cir. BAP 1995) ("A constructive trust is a remedy; as such, it is inchoate until its existence is

25

established by court order.") (citing *Elliott v. Frontier Props. (In re Lewis W. Shurtleff, Inc.)*, 778 F.2d 1416, 1419 (9th Cir.1985)).

The decision whether to impose a constructive trust or grant other equitable relief to the FTC lies in the future with the district court in the FTC action.  At that future date, the district court's decision on whether to impose a constructive trust or not depends on the merits of the FTC's claims.  Whether or not the funds at issue are property of the estate is irrelevant to the FTC's claims.  The evidence shows that the FTC agrees that the trust funds, including the $53,532 in monthly draws sent to Debtor from the trust funds, are property of the estate.  If the district court imposes a constructive trust, it may be enforceable regardless of whether or not the funds are property of the estate.[19]

Next, Defendants argue that the "trust funds" were not property of the estate under § 541(c)(2), which provides:  "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under nonbankruptcy law is enforceable in a case under this title."  Defendants contend that the trust funds they held under the SPI were being held in "actual trust for the benefit of Mr. Sann and the FTC" and were not part of Debtor's bankruptcy estate; and that Sherwood was taking reasonable steps to protect the trust property in accordance with the

---

[19]If the FTC prevails in the FTC action showing that circumstances warrant the remedy of a constructive trust, Ninth Circuit law requires that the district court weigh the equitable remedy against bankruptcy's policy of ratable distribution.  *Torres v. Eastlick (In re N. Am. Coin & Currency, Ltd.)*, 767 F.3d 1573, 1575 (9th Cir. 1985), *amended* 774 F.2d 1390 (9th Cir. 1985), *cert. denied*, 475 U.S. 1083 (1986); *Advent Mgmt.*, 178 B.R. at 490, quoting *N. Am. Coin*.  The burden of proof to establish that it would be inequitable under bankruptcy law to impose a constructive trust, once the grounds for such trust have been established, shifts to the trustee. *Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.)*, 13 F.3d 321, 325 (9th Cir. 1994); *Advent Mgmt.*, 178 B.R. at 490, citing *Unicom*; *In re Maron & Davis Advert., Inc.*, 2007 WL 7511954, * 10 (9th Cir. BAP).

Montana Uniform Trust Code when he refused to honor the Trustee's demand for turnover of the trust funds.

Defendants argue that the SPI restricted the transfer of the trust funds other than in accordance with its terms and that Defendants were at risk of contempt if they violated the terms of the injunction by refusing to deliver the monthly draws to the Debtor.  Plaintiff responds that § 541(c)(2) is inapplicable and that Sherwood had an obligation under the SPI to ensure that no action was taken to dissipate estate property.

Defendants cite *Patterson v. Shumate*, 504 U.S. 753 (1992), for the proposition that "applicable nonbankruptcy law" in § 541(c)(2) includes federal law, such as the SPI, as well as state law.  The Supreme Court wrote regarding § 541(c)(2):  "The natural reading of the provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law."  504 U.S. at 758.  The Court concluded that "applicable nonbankruptcy law" encompasses federal law such as ERISA as well as state law.  *Id.,* 504 U.S. at 759.  After the decision in *Patterson v. Shumate*, this Court construed § 541(c)(2) in *Martinson v. Towe, et al. (In re Towe)*, 173 B.R. 197, 211 (Bankr. D. Mont. 1994), *aff'd.*, 195 B.R. 137, 147 (D. Mont. 1996), writing "[w]here a valid trust exists under state law, with the debtor as the trustee and therefore bound by the provisions of the trust to act as a fiduciary for the beneficiaries, Section 541(c)(2) excludes that trust corpus from being property of the estate."[20]

Admittedly, the SOU was issued pursuant to federal statute, 15 U.S.C. § 53(b)

---

[20]One exception noted by the Supreme Court, not applicable in the instant case, is that "Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition.  *Whiting Pools*, 462 U.S. at 205, n. 10.

("Temporary restraining orders; preliminary injunctions").  However, a closer reading of the law and facts necessarily leads to the conclusion that § 541(c)(2) does not exclude the trust funds held by Defendants from being property of the estate.

Beginning with state law, Defendants argue that they were complying with the Montana Uniform Trust Code when they refused the Trustee's turnover demand.  State laws that attempt to withhold or shield assets that otherwise are available to a trustee for distribution under the Bankruptcy Code are preempted.  *Sherwood Partners, Inc. v. Lycos,* Inc., 394 F.3d 1198, 1200-01, 1203-04 (9th Cir. 2005).  In the instant case preemption is not applicable, first, because § 541(c)(2) allows for "applicable nonbankruptcy law," and second because the formalities for creation of a trust under Montana law were not satisfied.

The Montana Uniform Trust Code has set forth specific methods of creating a trust, such as by "(1) transfer during the settlor's lifetime or by will or other disposition taking effect upon the settlor's death; (2) declaration by the owner of property that the owner holds identifiable property as trustee; or (3) exercise of a power of appointment in favor of a trustee." MONTANA CODE ANN. ("MCA") § 72-38-401.  The only possible method applicable in the instant case is a declaration by the owner of property that the owner holds identifiable property as trustee.  MCA § 72-38-401(2).  Nothing in the 23 pages of SPI, Ex. A, can reasonably be interpreted as a declaration by Sann that he holds property as trust for himself and the FTC.

Under MCA § 72-38-402(b) a trust is created only if "(b) the settlor indicates an intention to create the trust."  A proper manifestation of an intention to create a trust is a basic requirement of the Montana Uniform Trust Code.  *New Hope Lutheran Ministry v. Faith Lutheran Church of Great Falls, Inc.*, 2014 MT 69, ¶ 60, 374 Mont. 229, 248, 328 P.3d 586, 600.  Nothing in the

SPI, Ex. A, created a trust, nor made Sann a trustee or a fiduciary to act for the FTC as a beneficiary.

By its terms, Ex. A is a "Stipulated Preliminary Injunction." FTC had accused Sann of unfair or deceptive acts. In Ex. A the FTC agreed to entry of the SPI "without waiving any privilege or the right to contest this matter on the merits and without admitting or adjudication of any issue of law or fact, other than the findings set forth below." Ex. A, p. 2. The SPI included a detailed "Asset Freeze," which restrained and enjoined Sann and other defendants from a long list of activities. Ex. A, pp. 7-10. Section IV allowed Sanns to use "frozen funds" to pay for personal and business expenses totaling $17,844 per month. Ex. A, p. 11. Ex. A lacks any language declaring that Sann holds property as trustee, or otherwise indicating an intention to create a trust under Montana law. The provision of Ex. A which authorized Defendants to send the monthly draws at issue limited the transfers to the Debtor and his spouse, not to the FTC or creditors. Given the FTC's distrust of Sann, evidenced by Sherwood's testimony of FTC's insistence on giving consent to any disbursements from the trust funds, the Court finds that the FTC did not consent to the creation of a trust in the SPI. The Court further finds that the SPI did not create a trust under the Montana Uniform Trust Code.

Since *Patterson* holds that § 541(c)(2) includes federal law such as ERISA as well as state law, 504 U.S. at 759, the Court next considers whether the SPI created a trust under the federal statute pursuant to which it was issued, 15 U.S.C. § 53(b). Section 53(b) provides for temporary restraining orders and preliminary injunctions when FTC has reason to believe that a person or entity is violating or about to violate any provision of law enforced by the FTC. Section 53(b)(2) authorizes the FTC to bring suit in a district court for a temporary restraining

order or preliminary injunction, without bond and, further, the FTC may seek a permanent injunction. Nothing in 15 U.S.C. § 53(b) discusses or mentions an intention to create a trust. By its terms § 53(b)(2) is limited to temporary relief in the form of a temporary restraining order or preliminary injunction, plus the authority to seek and prove the requirements for a permanent injunction. Ex. A represents temporary provisions, not a trust.

Defendants cite no case law which provides that 15 U.S.C. § 53(b) satisfies the requirement of § 541(c)(2) for a restriction on the transfer of a beneficial interest of the debtor in a trust comparable to ERISA, which the Supreme Court found included an enforceable transfer restriction for purposes of § 541(c)(2). *Patterson*, 504 U.S. at 760. Having examined the SPI, Ex. A and 15 U.S.C. § 53(b)(2), in the absence of citation to authority and based upon the temporary provisions of both the SPI and § 53(b)(2), this Court finds and concludes that Defendants' contention that the SPI and § 53(b) constitute enforceable transfer restrictions for purposes of § 541(c)(2) lacks merit.

This Court will not stretch the terms of a stipulated preliminary injunction entered into by the parties at the commencement of the FTC action, in order to preserve the status quo, to constitute a valid trust under state law or federal law such as the detailed provisions of ERISA which the Supreme Court found adequate in *Patterson*.

## II. Effects of Conversion to Chapter 7.

Defendants argue that they are not liable because Sherwood was not served with the conversion order until May 5, 2015, and did not know about it until May 15, 2015, after he sent the Debtor the first post-conversion monthly draw of $17,844. That does not explain why, or constitute a defense for, Defendants sending the following two monthly draws after receiving the

30

conversion order.

Section 348(a) of the Code explains the effect of conversion:

Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, *does not effect a change in the date of the filing of the petition, the commencement of the case,* or the order for relief.

§ 348(a) (emphasis added).

The evidence shows that Sherwood had knowledge of Debtor's Chapter 11 bankruptcy in November 2015, and that he had received notice of commencement of the case by December 2015. If Congress desired for conversion to effect a change in the date of "commencement of the case" for purposes of § 542(c), it could have drafted § 348 accordingly. Since § 348(a) provides that conversion of the case does not effect a change in the date of this filing of "commencement of the case," the date of commencement of the instant case for purposes of § 542(c) remains the original date of filing of Debtor's Chapter 11 petition.

Plaintiff argues that upon conversion of the case the Trustee "stepped into the Debtor's shoes," succeeding to all the Debtor's rights and interest in property of the estate by operation of law. That is correct. Section 323(a) of the Code provides: "(a) The trustee in a case under this title is the representative of the estate." § 323(a). While the instant case was pending under Chapter 11 no trustee was appointed. The Debtor was a debtor-in-possession with rights, powers and duties of a trustee serving under Chapter 11 under § 1107(a).

Debtor's Chapter 11 case was converted to Chapter 7 on April 29, 2015. Brandon was appointed Trustee in the case on April 30, 2015. Upon conversion to Chapter 7 the Debtor no longer had trustee powers under § 1107, but rather was left with the duties enumerated under

31

§ 521, including the duty to cooperate with a trustee serving in the case "as necessary to enable the trustee to perform the trustee's duties under this title[.]"  § 521(a)(3).  Thus, after this case was converted to Chapter 7, the Trustee was the sole representative of the estate and the Debtor and Defendants had no authority over the bankruptcy estate.  *In re Century City Doctors Hosp., LLC*, 2010 WL 6452903, * 11 (9th Cir. BAP), citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352–53 (1985).

In other words, all of the Debtor's rights to monthly draws pursuant to the SPI and to request such monthly draws and other rights granted under the SPI, and even the right to seek enforcement of the terms of the SPI against Defendants, became property of the estate under the broad definition of § 541(a) subject to the Trustee's authority after the case was converted to Chapter 7.  *Century City Doctors*, 2010 WL 6452903, at *11.

This Court acknowledges that the SPI is in effect and placed restrictions and obligations upon Defendants, and sympathizes with Defendants' perceived predicament.  For purposes of bankruptcy law, however, after the case was converted to Chapter 7, Defendants were gratuitous interlopers, whose employment by the estate the Trustee had not requested and this Court had not approved as required by § 327.

### III.  Section 542 – Turnover of Property of the Estate.

Plaintiff's FAC seeks turnover of $53,532 under § 542(a), which provides in relevant part:  "[A]n entity . . . in possession, custody, or control, during the case, of [property of the estate, or exempt property], shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  *Shapiro v. Henson*, 739 F.3d 1198, 1200 (9th Cir. 2014).  A leading commentator writes that a

turnover action "invokes the court's most basic equitable powers to gather and manage property of the estate." 5 COLLIER ON BANKRUPTCY, ¶ 542.01 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2016), quoting *Braunstein v. McCabe*, 571 F.3d 108, 122 (1st Cir. 2009).

Plaintiff asserts that she satisfied the elements for entry of judgment under § 542(a) in the amount of $53,532, representing the total of three monthly draws of $17,844 each from the trust funds on deposit in Defendants' IOLTA account, after the conversion of this case to Chapter 7. Defendants argue that the FAC has no basis in law and applicable facts and that Plaintiff lacks authority to claim Defendants owe any money to the estate because the trust funds were subject to the SPI issued pursuant to 15 U.S.C. § 53(b) and FTC's claims that Sann's funds belong to consumers.

The Court dispenses briefly with the final element of § 542(a) and finds that the $53,532 in trust funds which Defendants sent to the Debtor from their IOLTA account is not of inconsequential value or benefit to the estate. Aside from the obvious, this finding is supported by the Trustee's uncontroverted testimony that recovery of the $53,532 from Defendants would increase the distribution to creditors of the estate.

This Court construed § 542(a) in *In re Deines*, 17 Mont. B.R. 114, 119-120 (Bankr. D. Mont. 1998), quoting *Whiting Pools*, 462 U.S. at 204-07. Section 542(a) is a provision of the Code which "requires an entity (other than a custodian) holding any property of the debtor that the trustee can used under § 363 to turn that property over to the trustee . . . . While there are explicit limitations on the reach of § 542(a), none requires that the debtor hold a possessory interest in the property at the commencement of the reorganization proceedings." *Deines*, 17 Mont. B.R. at 120, quoting *Whiting Pools*, 462 U.S. at 205-06.

The Ninth Circuit explained:  "Two key phrases evidence that § 542(a) allows a turnover motion to be brought against the entity at any time during the pendency of the bankruptcy case, even if the entity no longer possesses or has custody or control over the property, at the time the motion is filed."  *Shapiro v. Henson*, 739 F.3d at 1200.  The two key phrases from § 542(a) are "during the case" and "or the value of such property."  *See Shapiro*, 739 F.3d at 1200-01.  The Ninth Circuit wrote:  "In sum, the phrases 'or the value of such property' and 'during the case' evidence the trustee's power to move for turnover against an entity that does not have possession, custody, or control of property of the estate at the time the motion was filed."  *Shapiro*, 739 F.3d at 1202.

The Ninth Circuit declined to follow the Eighth Circuit's requirement that an entity have possession, custody or control of the subject property at the time the bankruptcy trustee moves for turnover under § 542(a).  *Shapiro*, 739 F.3d at 1203-04; *contra Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423, 428 (8th Cir. 2007).  After discussing the Eighth Circuit's reasoning and finding it unpersuasive, the Ninth Circuit concluded:  "Section 542(a)'s plain language, pre-Code practice, and other Code provisions compel our holding that a trustee may seek turnover from an entity that had 'possession, custody, or control' of the subject property during the bankruptcy case whether or not the entity had 'possession, custody, or control' at the time the turnover motion is filed."  *Shapiro*, 739 F.3d at 1199, 1204.

More recently the Ninth Circuit wrote:  "The trustee is not required to make any demand for turnover of estate property."  *APJL Consulting, LLC v. Treasures, Inc. (In re Treasures, Inc.*), 2015 WL 925957, *21 (B.A.P. 9th Cir. Mar. 3, 2015) (slip copy) (holding that turnover requirement of § 542 is "self-executing).  As noted in Collier's:  "By its express terms, section

34

542(a) is self-executing, and does not require that the trustee take any action or commence a proceeding or obtain a court order to compel the turnover." 5 COLLIER ON BANKRUPTCY ¶ 542.03.

Plaintiff argues that Sherwood had possession, custody and control of the trust funds, and failed to turn over to $53,532 to the Trustee, which is all § 542(a) requires for her to prevail. Defendants argue that § 542(a) does not authorize the Plaintiff to demand turnover of funds the ownership of which is in dispute because the funds are not estate property, citing *In re Allegheny Health Educ. and Research Found. v. Williams*, 233 B.R. 671, 677 (Bankr. W.D. Pa.1999). Defendants contend that the FTC had not stipulated to the transfer of funds to the Plaintiff by the date Defendants sent the last of the three monthly draws under the SPI.

The citation to *Allegheny* does not support Defendants because they only held possession of the assets under the SPI. Defendants have not asserted and have no claim of ownership of the trust funds. Above, pursuant to the Supreme Court's decision in *Whiting Pools*, this Court found that the trust funds are property of the estate under § 541(a)(1). 462 U.S. at 204-05.

Plaintiff argues that Sherwood's belief that he was required by the SPI to continue sending the Debtor monthly draws does not relieve him of liability and that Sherwood should have been as cautious with respect to the Trustee's rights to the trust funds under the Bankruptcy Code as he was with respect to his obligations under the SPI. The instant adversary proceeding is not a § 542(a) action by the Trustee against the FTC demanding funds whose title is in dispute. The evidence set forth above shows that the FTC stated plainly that the trust funds were property of the estate and agreed with the representations of Trustee's counsel that the trust funds were property of the estate. This Court stated in open court and later found in its written turnover

35

order that the trust funds are property of the estate. Debtors' bankruptcy counsel told Sherwood not to send the monthly draws after conversion of the case. Sherwood could have interpleaded the funds or held the monthly draws until he had further clarification and avoided liability under § 542(a). Instead, Sherwood continued to send the Debtor $17,532 in monthly draws, even refusing the Trustee's demand letter for turnover. Under controlling Ninth Circuit authority and the plain language of § 542(a), the Trustee may seek turnover of the $53,532 from the Defendants whether or not they had possession, custody or control of the trust funds at the time the FAC was filed. *Shapiro v. Henson*, 739 F.3d at 1202.

Section 542(c) provides:

> Except as provided in subjection 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.

§ 542(c).

Plaintiff argues that § 542(c) is not applicable to Defendants because Sherwood had notice and actual knowledge of the commencement of Debtor's bankruptcy case in 2014, before he disbursed the three monthly draws currently at issue and that he learned of the conversion after the first monthly draw but before it was deposited into Debtor's account, but Sherwood did not stop payment or seek clarification. Defendants argue that they did not receive notice of the conversion order until May 5, 2015, after they paid the Debtor the first draw of $17,844 on May 1, 2015.

The plain language of § 542(c) allows an entity "that has neither actual notice nor actual

knowledge of the commencement of the case" to transfer property of the estate or pay a debt in good faith. When the language of a statute is plain, the sole function of the court is to enforce it according to its terms unless the disposition required by the text is absurd. *Lamie*, 540 U.S. at 534. Section 542(c) refers to "commencement of the case." It does not refer to the date of conversion of a case, nor to the date an entity has actual notice or knowledge of the date of conversion.

Above the Court discussed the effect of conversion under § 348. Section § 348(a) provides that, with certain exceptions, conversion "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." Congress knew how to draft exceptions to § 348(a), and included therein exceptions at § 348(b) and § 348(c) (applying sections 342 and 365(d) "as if the conversion order were the order for relief."). Congress did not include § 542(a) or § 542(c) in the exceptions at §§ 348(a), (b) and (c). Thus, the date on which Defendants learned or had notice of conversion of the case is irrelevant. The Court recognizes that holding Defendants liable for turnover under § 542(a) and § 542(c) results in a hardship to them, but the disposition required by the text of § 542(c) is not absurd. *Lamie v. U.S. Trustee*, 540 U.S. at 534

Sherwood knew of this bankruptcy case as early as November 2014 and had notice of the commencement of the since December 2014. Defendants filed a proof of claim. Montana Local Bankruptcy Rule 2002-2 provides: "Any creditor or other party in interest may request special notice and the addition of its name to the master mailing list in a bankruptcy case by using Mont. LBF 23, or any similar request form." Defendants had the right to file LBF 23 at any time to be added for notice purposes. Defendants did not file a request for notice in time to receive notice

of the conversion proceedings.  Sherwood testified that he did not sign up for electronic notice until this adversary proceeding commenced.

Maxims of equity include: "The law aids the vigilant before those who sleep on their rights."  MCA § 1-3-218.  Defendants could have signed up for written or electronic notice as early as 2014, and thereby could have been kept apprised of the Trustee's motions to convert and for turnover, and notices of hearing.  Despite having possession of more than a half million dollars of Debtor's property in their IOLTA account during a bankruptcy case, Defendants to a large degree ignored the bankruptcy proceedings and now ask to be excused from liability based upon the SPI and the press of other business.

### IV.  Tracing/Equitable Considerations.

Defendants argue that the Debtor extinguished the obligation which Plaintiff seeks from Defendants when Debtor wired the Trustee $80,248.75 on August 13, 2015, and that "standard money tracing rules" show that the three monthly draws sent from Defendants to the Debtor remained identifiable and were paid in full.[21]  Defendants contend that the Trustee's claim for turnover of $53,532 from them is unreasonable and inappropriate under the circumstances of this case and that "equity commands" that Defendants be credited with the $53,532 included in the Debtor's wire transfer to the Trustee on August 4, 2015, to avoid a "huge injustice" to Defendants and unjust enrichment of the Trustee under Montana law.

---

[21]Defendants' Ex. DD discusses several tracing options under which their liability to the Trustee is reduced or eliminated, because the $53,532 in monthly draws are traceable to Debtor's account 6474, from which they were paid to the Trustee by Debtor by wire transfer.  Ex. DD shows the results of each tracing method which Defendants request the Court use are:  FIFO (Defendants owe $0); LIFO (Defendants owe $8,335.03); PRORATA (Defendants owe $2,500.51); and no tracing (Defendants owe $0).  In their post-trial brief regarding tracing and allocation of funds Defendants concede that LIBR is not applicable.

Plaintiff contends that tracing is inappropriate because the Trustee is entitled to turnover of all funds in Debtor's bank accounts, so no need exists to apply an equitable "tracing fiction" to separate commingled funds.  Plaintiff contends that applying a tracing analysis would be inequitable in this case because the Trustee is entitled to turnover under § 542 and has a duty to collect property of the estate and  maximize distribution to creditors under § 704.  Plaintiff argues that the Debtor did not turn over the full amount required under the turnover order, for which Debtor was held in contempt, and therefore the Trustee is entitled under § 542(a) to turnover of the $53,532 which Defendants sent to the Debtor.

Defendants argue that they should be granted relief because of "collective attorney confusion" and uncertainty based on the effect of conversion in bankruptcy and the district court's SPI issued under 15 U.S.C. § 53(b).  Defendants contend that the district court and the bankruptcy court both were "asserting what was arguably conflicting control" of the trust funds held by Defendants.  Plaintiff responds that Defendants' arguments based on equitable defenses are irrelevant to their liability under § 542(a).  Plaintiff argues that, to the extent there was confusion, the appropriate course of action was to safeguard the trustee funds while the courts resolved the issue; and that federal law in the form of the Bankruptcy Code resolves any ambiguity.

Defendants contend that they did not have FTC's consent to transfer the trust funds to the Trustee, but did have FTC's consent to send the Debtor the monthly draws if requested, which Defendants were then required to pay under the SPI until it was amended by the district court.  Further, Defendants argue that the Trustee's counsel condoned the transfers when he stated "It's fine" to distribute funds to the Debtor who then was obligated to give the funds to the Trustee.

39

The plain language of § 542(a) requires Defendants to deliver to the Trustee property of the Debtor that the Trustee can use under § 363. § 542(a); *Whiting Pools*, 462 U.S. at 204-06. When the language of a statute is plain, the sole function of the court is to enforce it according to its terms unless the disposition required by the text is absurd. *Lamie*, 540 U.S. at 534. Defendants appeal to equity for relief. However, this Court's equitable powers under § 105(a) cannot override specific mandates of the Bankruptcy Code. *Law v. Siegel*, __ U.S. __, 134 S.Ct. 1188, (2014); *San Rafael Baking Co. v. N. Cal. Bakery Drivers Sec. Fund (In re San Rafael Baking Co.)*, 219 B.R. 860, 866 (9th Cir. BAP 1998) ("Bankruptcy courts are courts of equity but must follow the law and cannot ignore express statutory commands."). The Court sees nothing in the plain language of § 542(a) which permits a court to grant a transferee relief from liability based upon tracing principles.

Another maxim of equity provides: "He who seeks equity must do equity." *Gardenhire v. Comm'r (In re Gardenhire)*, 209 F.3d 1145, 1152, n.11 (9th Cir. 2000); *see also In re Marriage of Cox*, 266 Mont. 67, 71, 878 P.2d 903, 906 (1994). Sherwood failed to avail himself the opportunity to sign up for immediate notice of the Debtor's bankruptcy proceedings. The evidence shows that the Trustee informed him that the trust funds were property of the estate, and that the FTC agreed. This Court found that the trust funds were property of the estate. Debtor's bankruptcy counsel told him not to disburse the trust funds after conversion. Sherwood did not heed these repeated admonitions from other parties and the Court, and instead of holding onto the trust funds pending clarification,[22] he continued to send the Debtor $17,844 monthly draws after

---

[22]The challenges of a busy court calendar, and the demands of due process, require that parties must wait for disposition of matters from the court, which come as promptly as possible.

conversion of the case.  In this Court's view Defendants have not demonstrated that they acted in accordance with equity sufficiently to be awarded equitable relief.

Defendants' obligations under the SPI do not excuse Defendants' failure to heed the numerous warnings from this Court, the parties and Debtor's bankruptcy counsel.  Defendants contend that they were afraid that the Debtor could seek to have them held in contempt by the district court if Defendants did not continue to send the Debtor the monthly draws under the SPI. Again, after conversion of the case to Chapter 7, Debtor no longer was a debtor-in-possession with trustee powers and had no rights to the monthly draws, to request a contempt sanction or otherwise to request relief based on the SPI.  The Trustee was the sole representative of the estate under § 323(a) and the Debtor and Defendants had no authority over the bankruptcy estate including the trust funds.  *In re Century City Doctors Hosp., LLC*, 2010 WL 6452903, at* 11.

In the Ninth Circuit it has been held that a failure to return repossessed property after notice of bankruptcy filing violated the automatic stay.  *Abrams v. Sw. Leasing & Rental, Inc. (In re Abrams)*, 127 B.R. 239, 242 (9th Cir. BAP 1991).  In the instant case Defendants exercised control over the trust funds when they sent the Debtor three checks of $17,844 for monthly draws after the date of conversion.  However, not only did the Debtor not have debtor-in-possession powers after conversion of the case to request monthly draws under the SPI, the Debtor had the duty to cooperate with the Trustee to aid the Trustee in her duty to collect the trust funds, which were property of the estate.  The Debtor could not, after conversion, without the Trustee's authorization request monthly draws from Sherwood for living and business expenses, and Debtor could not authorize Sherwood to send the Debtor the three monthly post-conversion checks.  The Trustee, who stepped into the Debtor's shoes upon conversion, did not consent,

request or authorize Defendants to send the Debtor the three $17,844 monthly draws. Thus, Defendants were not authorized under the SPI to send the Debtor the $53,532.

In the Ninth Circuit actions taken in violation of the stay are void, not merely voidable.[23] *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000); *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992); *Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n*, 997 F.2d 581, 586 (9th Cir. 1993). Defendants argue that it would be inequitable for them to be held liable when they believed they were acting in compliance with the SPI. Since their actions sending the $53,532 to Debtor post-conversion are void, not merely voidable, the Court is not inclined to grant Defendants relief on equitable grounds.

Defendants had notice and actual knowledge of the Debtor's bankruptcy and of the conversion of the case; so Defendants had an affirmative duty to conform their conduct to the automatic stay once he learned of the conversion of the case. *Sternberg v. Johnston,*[24] 595 F.3d 937, 943, 944 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 102, 178 L.Ed.2d 29 (2010); *Del Mission Ltd.*, 98 F.3d at 1151-52. This means that, once Sherwood learned of the conversion of the case to Chapter 7, Defendants had an affirmative duty to remedy the stay violation. *Sternberg*, 595 F.3d at 943-945; *Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd*.), 98 F.3d 1147, 1151-52 (9th Cir. 1996) ("the onus to return estate property is placed upon the possessor; it does not fall on the debtor to pursue the possessor); *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191-

---

[23]The Plaintiff does not seek an award based on a stay violation in this adversary proceeding.

[24] On the issue of attorney's fees, the Ninth Circuit overruled *Sternberg* "to the extent it is inconsistent with this opinion . . . ." *Am. Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1097 (9th Cir. 2015). *Sternberg* remains good law for the principles stated above.

92 (9th Cir. 2003).

Defendants failed their affirmative duty to remedy the violation.  Instead, the evidence shows that Defendants did not attempt to stop payment on the first post-conversion monthly draw they sent the Debtor, even though the first check was not deposited for almost a month, and Defendants continued to send the Debtor monthly draws against the advice of both Debtor's bankruptcy counsel and the demands of the Trustee.

Defendants had other options which would have avoided liability under § 542(a) and the SPI.  One option was to do nothing and await the district court's decision which came in August 2015.  Another option was to interplead the trust funds.  Defendants explain that they did not interplead the trust funds because the SPI authorized Sanns, and no one else, to demand the monthly draws.  Defendants further argue that even if they interpleaded the monthly draws, the financial result for Plaintiff would have been the same because the Debtor would have had less in account 6474 to wire transfer to Plaintiff.  After conversion the Debtor's right to request monthly draws pursuant to the SPI came under the authority of the Trustee, so interpleading the funds would not have run afoul of the Defendants' obligations under the SPI.[25]  The financial result of doing nothing may have been the same from the estate's perspective, but by doing nothing until receiving direction from the district court Defendants may have avoided this adverse result of the Plaintiff's § 542(a) claim.

## CONCLUSIONS OF LAW

---

[25]Given the FTC's active participation in the FTC action and the Trustee's actions to substitute into the FTC action as a party regarding property of the estate, it is reasonable to assume that either or both the FTC and the Trustee would have opposed any contempt proceedings by the Debtor against Defendants based upon Debtor's desire to continue receiving the monthly draws after conversion of his case to Chapter 7.

1.  This Court has jurisdiction of the above-captioned Chapter 7 bankruptcy under 28 U.S.C. § 1334(a).

2.  This adversary proceeding involves a claim for turnover of property of the estate under § 542(a) of the Bankruptcy Code, which is a civil proceeding arising under Title 11, U.S.C., and related to the Chapter 7 case under 28 U.S.C. § 1334(b).

3.  Plaintiff's claim for turnover of property of the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

4.  The "trust funds" of the Debtor held by Defendants in their IOLTA account are property of the estate under § 541(a).

5.  Plaintiff satisfied her burden of proof and is entitled to judgment against Defendants in the amount of $53,532 under § 542(a) ("Turnover of property of the estate").

6.  Notice or actual knowledge of the conversion of a case is irrelevant to the exception provided under § 542(c).

7.  Defendants are not entitled to relief from liability under § 542(a) based upon principles of equity.

**IT IS ORDERED** a separate Judgment shall be entered in conformity with the above against Defendants Michael J. Sherwood and Michael J. Sherwood, P.C., in the amount of $53,532.00, in favor of the Plaintiff/Trustee Christy L. Brandon under § 542(a).

Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge